MORRIS v. RECEIVERS OF RICHMOND & D. R. CO.

(Circuit Court, W. D. Virginia. November 24, 1894.)

WATERS—LIABILITY FOR OBSTRUCTION OF STREAM.
    Plaintiff owned a warehouse on the bank of a stream, several hundred
yards above the point at which defendant's railroad crossed the stream on
an embankment, under which were two culverts to allow passage to the
water. In an extraordinarily severe freshet, plaintiff's warehouse was
flooded, and his goods damaged. *Held*, that plaintiff could not hold de-
fendant liable for such damage without showing, affirmatively, that the
damage would not have occurred if there had been no embankment or no
obstruction in the culverts.

This was an action of trespass on the case by E. L. Morris against
the receivers of the Richmond & Danville Railroad Company to re-
cover damages for injury to plaintiff's warehouse. At the close of
the evidence on trial before a jury, defendants moved for the direc-
tion of a verdict in their favor.

P. W. McKinney and W. H. Mann, for plaintiff.

B. B. Munford and A. J. Montague, for defendants.

HUGHES, District Judge. The plaintiff here seeks to recover
from the Richmond & Danville Railroad Company compensation for
damages caused by the water of a very high freshet which occurred
in Drake's Branch in Charlotte county, Va., in September, 1893.
The damage was to hogsheads of tobacco belonging to the plaintiff,
which were stored in a warehouse on the banks of the stream, into
which the water of the freshet rose some two feet above the floor of
the building. The amount of the damage claimed is $6,000. Several
hundred yards below the warehouse the railroad crosses Drake's
Branch on an embankment, under which are two culverts constructed
for the vent of the water of the stream. The complaint of the plain-
tiff, on which he founds his claim for damages, is that the passage of
water through these culverts was obstructed by more or less rubbish
and débris lodged in them at the time of the freshet. There is no
proof that there had been any previous complaint of the insufficiency
of these culverts at any time since they were constructed, 40 years
ago. It is proved that the freshet which caused the damage to the
plaintiff's tobacco was produced by a downpour of rain, unprece-
dented in volume within the memory of middle-aged witnesses who
were examined on the subject. Some 30 or more witnesses have
been examined on the naked question whether there were obstruc-
tions in the culverts.

The vis major in the case was the freshet; and, inasmuch as this
was of extraordinary magnitude and volume, it is to be regarded
as one of those dispensations of Providence which are called "acts
of God," such as cannot be provided against by the ordinary care and
foresight of man. Our law holds that damages cannot be recovered
against man when it is caused by the act of God. The law also holds
that, where damages occur from an act of God and from the neg-
ligence of man occurring coincidently, there can be no recovery, un-
less it be affirmatively proved that, if there had been no act of God,

the damage would still have occurred. In the case at bar it is a non sequitur to assume that, because there was a railroad embankment below the place of damage by which the flow of the water of the freshet was obstructed, therefore the damage to plaintiff's tobacco was caused by the obstruction. It is not enough to prove the obstruction and stop there. Something more must be proved. Damages from freshets so frequently occur on streams in which there are no dams below the places of damage that the courts are bound to take judicial notice of the fact. Where damage occurs during the coincident existence of a freshet and an obstruction, it must be affirmatively proved that, if there had been no obstruction, there would have been no damage. It is of common knowledge that damage is produced by freshets where there are no dams or other obstructions to the waters of streams below the places of the damage. We have very notable historical instances of this fact. The Johnstown flood in Pennsylvania, where a dam several miles above the town burst in a freshet, and suddenly let loose a great volume of water, which inundated all the region of country below, overwhelming the town of Johnstown in its flood, washing away buildings in the town, and devastating the country for many miles along the course of the stream, was a notable instance of the fact that freshets may do damage where there is no dam below. Many other such instances might be given from history. Freshets in streams high enough to overflow lands, carry away wooden structures, and, by inundating dwellings, warehouses, and other buildings, damage property contained in them, are of continual occurrence; far more often, indeed, in streams where there are no dams below than where there are such dams. The courts take judicial cognizance of facts of common knowledge like this; and therefore it becomes necessary in every case where dams do exist for the plaintiff to show affirmatively that the particular damage for which he sues would not have occurred from the freshet if the dam had not been there. This requirement of law has not been supplied in the case at bar. If the damage for which the plaintiff sues would have occurred had there been no railroad embankment below the warehouse, then the plaintiff has no case. It was vital to his suit that he should prove that he would not have been damaged if there had been no embankment, or obstructed culverts.

Plaintiff's counsel, in opening the case to the jury, did not announce an intention to make this vital matter clear to them. No witness was examined in the whole course of the plaintiff's evidence to prove that, if there had been no obstruction in the culverts, there would have been no damage to the tobacco in the warehouse. I felt interested to know how this was, and listened attentively for information on the subject, but in vain. There was no affirmative testimony whatever to this fact, and the inferences were strongly the other way. In the Jackson lot, which was probably half a mile above the culverts, the water was five feet above the ordinary level; so that, if there had been a warehouse on that lot, the water would have been as much as two feet above the floor. The water there was entirely beyond any possible influence from the culverts. The plaintiff

himself proved that the flotsam and jetsam of the high water was all borne to the railroad embankment, and left in a great pile there after the subsidence of the flood, drawn by the suck of the culverts; and not a single witness testified that any of the flotsam and jetsam drifted back towards the warehouse. It was vital to the plaintiff's case that he should have proved that, if there had been no obstruction in the culvert, there would have been no water above the floor of the warehouse. It was a non sequitur to assume that, because there was obstruction in the culverts, therefore there was high water in the warehouse; and he failed to produce any affirmative evidence to show that there would have been no high water in the warehouse if there had been no obstruction in the culverts. I must therefore instruct the jury to find a verdict for the defendants.